STATE OF NORTH CAROLINA v. LESTER PLEMMONS

No. 7529SC973

(Filed 7 April 1976)

1. Criminal Law § 169— exclusion of testimony — harmless error

   In a felonious assault prosecution, exclusion of testimony by defendant's wife that "somebody hollered and said come back here," if erroneous, was not prejudicial error where this information had already been placed before the jury by defendant's testimony.

2. Criminal Law §§ 102, 128— reference to codefendant's conviction — harmless error

   The trial court in a felonious assault case did not err in failing to declare a mistrial when the district attorney referred to the fact that a codefendant had previously been convicted of the same charge for which defendant was on trial since the court's warning to the jury "not to consider that question or answer" was sufficient to render the reference to the codefendant's conviction nonprejudicial.

3. Assault and Battery § 15— self-defense — fault in bringing on fight — failure to withdraw

   The trial court in a felonious assault case did not err in refusing to instruct on self-defense where defendant was at fault in bringing on the affray and never abandoned the fight and never withdrew.

APPEAL by defendant from *Crissman, Judge.* Judgment entered 26 June 1975 in Superior Court, McDOWELL County. Heard in the Court of Appeals 17 March 1976.

Defendant was indicted for assault with a deadly weapon with the intent to kill, inflicting serious injury.

At trial, the State's evidence tended to show that defendant, accompanied by one Richard Smith, Mrs. Plemmons and others, proceeded by car to a trailer home on 4 August 1974 where defendant and Smith provoked an altercation with the victim Herman Wayne Noblitt. The dispute, originally verbal in nature, rapidly deteriorated into an exchange of gunfire. Eyewitness Harold Dean Noblitt, brother of the victim, testified that defendant and Smith

> " . . . came out the road in front of my house and I heard my sister's kids hollering that 'it's Richard Smith.' I jumped up and ran to the door and they turned around. It's a dead-end road. They came to the end of my mother's trailer which is about 10 or fifteen feet from the road and I heard Richard Smith holler to 'tell that God Damn Herman

Noblitt I'm going to kill the Son of a Bitch.' My mother came out of the trailer, went near the car and asked for them to go on, that she did not want any trouble. About 3 or 4 minutes later, Herman came out of the house and when he did, I saw Richard Smith raise a shotgun out of the back seat. He was cursing and he shot across the yard when there was over a dozen small kids out there. Richard Smith and Lester Plemmons then pulled up about 20 feet and they backed up and Richard shot again through the yard. Then they continued going around the yard about 100 feet or so and Lester Plemmons got out of the car on the driver's side. I saw someone hand him a shotgun out of the car and he took it from an open door on the driver's side and shot across my yard and hit my brother, Herman Noblitt, in the face. Herman was bleeding real bad. He had shots on top of his head, nose, ears and chest, and he didn't have any of those injuries prior to Lester's shooting. After that, they jumped back in the car and left.

My brother, Herman Noblitt, had a gun and after Richard Smith shot twice, Herman fired in the air and they took off. Then Lester Plemmons stopped and got out of the car and shot. My brother did not shoot in Lester Plemmon's direction. The shot that Lester Plemmons fired hit the end of my mother's trailer. I was in the direct line of fire and my nephew was in the house or in the door of the trailer."

Other eyewitnesses corroborated Harold's version of the assault.

Defendant's evidence tended to show that the defendant, angered by Herman Noblitt's purported overture to Mrs. Plemmons, " . . . went down to tell him [i.e. Noblitt] to stay away from her." Defendant, however, maintained that he was " . . . not up there looking for trouble." Initially unable to find Herman Noblitt, the defendant turned to leave, but then heard "somebody [holler] 'come here a minute.' " Apparently, the caller was either Harold or Herman Noblitt, and defendant claimed that he suddenly found himself facing the Noblitt brothers each of whom had a gun. Defendant testified that

" . . . Herman Noblitt pulled a pistol up out of his pocket. He jerked it real hard and it went up in the air and went off and when it did I mashed the gas and he leveled the pistol at the car and shot twice. I saw his brother step out

of the door of his house with a shotgun. His name is Harold Noblitt. I saw him level the shotgun or some long gun at the car and when I got out of his sight, I stopped the car and jumped out and told them to hand me a gun. I was in the back and Herman Noblitt was standing behind something and he had it leveled in both hands like that. (Witness demonstrates.) I throwed the gun to my shoulder and pulled the trigger. I evidently hit him. I jumped back in the car and came straight to the sheriff's office. I don't know if Herman Noblitt shot the shotgun or not. I was busy driving. I didn't know Herman Noblitt. The first time I saw him was the day before. As to whether or not I intended to kill Herman Noblitt I don't know what my intentions were. I didn't intend to shoot a gun. When I went down there I did not take a gun with me, Richard had the shotgun. I know he had some shells for a shotgun, but I did not have a gun on my person.

As I started to leave Herman started shooting and I stopped the car and shot back. I did that because when somebody hits me I gotta hit them back, and I know for a fact I was being shot at."

From a plea of not guilty, the jury returned a verdict of guilty of assault with a deadly weapon with the intent to kill. From judgment sentencing him to a term of imprisonment, defendant appealed.

*Attorney General Edmisten, by Associate Attorney Norma S. Harrell, for the State.*

*Dameron and Burgin, by Charles E. Burgin, for defendant appellant.*

MORRIS, Judge.

[1] Defendant first contends that the trial court erred in excluding Mrs. Plemmons's testimony that " 'somebody hollered and said come back here.' " Defendant asserts that this testimony went to the purported issue of self-defense and " . . . should have been allowed into evidence to be considered by the jury for whatever weight the jury cared to give it." We find no merit to this contention. The record clearly indicates that this information was already before the jury, having been brought forward by defendant's own testimony, and thus the trial court's

error, if any, in excluding that portion of Mrs. Plemmons's testimony must be deemed harmless.

[2]   Defendant also argues that the trial court erred in failing to declare a mistrial when the district attorney brought to the attention of the jury the fact that a codefendant, Richard Smith, had previously been convicted of the same charge for which the defendant was being tried. Defendant, moreover, assigns as error the failure of the trial court to give a detailed warning to the jury to disregard this particular question and answer. We disagree.

Here there was but one instance where this other conviction was brought to the jury's attention and when the trial court heard the district attorney's single and isolated objectionable reference to Smith's conviction, it promptly sustained the defendant's objection and immediately advised the jury " . . . not to consider that question or answer. . . . " We believe this warning, under these circumstances, sufficiently met the requirements of the law with respect to the extent of detail required when warning the jury and rendered the remark harmless and nonprejudicial. See: 48 A.L.R. 2d 1016, Prejudicial Effect of Prosecuting Attorney's Argument or Disclosure During Trial That Another Defendant Has Been Convicted or Has Pleaded Guilty." Cf: *State v. Kerley,* 246 N.C. 157, 97 S.E. 2d 876 (1957) ; *State v. Atkinson,* 25 N.C. App. 575, 214 S.E. 2d 270 (1975).

[3]   Finally, defendant contends that the trial court erred in failing to grant defendant's request for instructions on the law of self-defense. Again we disagree.

> " 'The right of self-defense is available only to a person who is without fault, and if a person voluntarily, that is, aggressively and willingly, without legal provocation or excuse, enters into a fight, he cannot invoke the doctrine of self-defense unless he first abandons the fight and withdraws from it and gives notice to his adversary that he has done so.' " *State v. Watkins,* 283 N.C. 504, 511, 196 S.E. 2d 750 (1973). (Citation omitted.)

Here defendant never abandoned the fight and never withdrew. He simply drove off a short distance out of sight of Noblitt and then stepped from his car and shot the victim. An instruction

on self-defense was not warranted by the evidence, and the court properly omitted it from his charge.

No error.

Judges HEDRICK and ARNOLD concur.