TYSON, Judge.
 

 Justin Kyle Mills ("Defendant") appeals from a jury verdict finding him guilty of assault with a deadly weapon inflicting serious injury. We find no error in Defendant's conviction or judgment entered thereon.
 

 I. Background
 

 On 29 October 2014, Michael LeClair ("Mr. LeClair") lived on his father's lot at the Lakeview Mobile Home Estates in Carteret County, North Carolina. Mr. LeClair's niece, Heather Davis ("Ms. Davis"), lived with Defendant on an adjoining lot within the same mobile home park. The two lots are separated by a row of large bushes.
 

 That evening, Defendant and Ms. Davis arrived home and heard their dogs barking loudly. Mr. LeClair heard Defendant and Ms. Davis yelling at the dogs and at each other. He subsequently yelled at Defendant and Ms. Davis from his lot, instructing them to "knock it off." Defendant and Mr. LeClair exchanged verbal insults and threats with one another from their respective properties. Defendant and Mr. LeClair had previously engaged in physical altercations and made verbal threats to each other.
 

 Defendant went inside his trailer and retrieved a 30.06 bolt-action rifle. Armed with the rifle, Defendant went over to Mr. LeClair's lot and confronted Mr. LeClair. Mr. LeClair was not armed with a weapon during the altercation. After an additional exchange of words, Defendant fired a warning shot into
 
 *642
 
 the ground. Mr. LeClair testified he moved toward Defendant in order to take the rifle from him. When Mr. LeClair was approximately ten feet away from Defendant, Defendant shot Mr. LeClair in the groin. Defendant called 911, and was later arrested.
 

 Ms. Davis testified, on the evening in question, Mr. LeClair continually yelled at Defendant to "[g]et your ass over here." Ms. Davis testified Defendant carried the rifle with him upon entering onto Mr. LeClair's property because "he was afraid for his life," and had the rifle with him "just in case." The defense asserts, when Mr. LeClair ran towards Defendant, Defendant had no choice but to shoot Mr. LeClair. At trial, Defendant requested a jury instruction on self-defense. The trial court declined to instruct the jury on self-defense.
 

 The jury returned a verdict finding Defendant guilty of assault with a deadly weapon inflicting serious injury. Defendant was sentenced to an active term of a minimum of 33 months and a maximum of 52 months imprisonment.
 

 II. Jurisdiction
 

 On 6 May 2015, Defendant filed a handwritten notice of appeal. His notice failed to designate this Court as the court to which the appeal was taken, and it was not served on the District Attorney as required by Rule 3(d) of the North Carolina Rules of Appellate Procedure. N.C.R.App. P. 3(d). Defendant's trial attorney also filed a written notice of appeal and served it on the District Attorney's Office on 7 May 2015. This notice of appeal also failed to designate the court to which the appeal was taken. Defendant's failure to designate the court to which his appeal is taken violates Rule 3(d).
 
 Id.
 
 The trial court prepared the Appellate Entries noticing the appeal and appointing appellate counsel on 7 May 2015.
 

 On 17 February 2015, Defendant petitioned this Court issue its writ of certiorari pursuant to Rule 21 of the North Carolina Rules of Appellate Procedure. "This Court has liberally construed this requirement and has specifically held that a failure to designate this Court in its notice of appeal is not fatal where the ... intent to appeal can be fairly inferred and the [appellees] are not mislead by the ... mistake."
 
 Phelps Staffing, LLC v. S.C. Phelps, Inc.,
 

 217 N.C.App. 403
 
 , 410,
 
 720 S.E.2d 785
 
 , 791 (2011) ;
 
 see also
 

 State v. Springle,
 
 --- N.C.App. ----, ----,
 
 781 S.E.2d 518
 
 , 520-21 (2016).
 

 The State neither filed any response to Defendant's petition, nor argues on appeal that it has incurred any prejudice from Defendant's errors in filing his notice of appeal. In our discretion, we grant Defendant's petition and issue writ of certiorari to permit review of the substantive issues presented in Defendant's appeal.
 

 III. Issues
 

 Defendant argues the trial court erred by: (1) failing to instruct the jury on self-defense; and (2) failing to intervene
 
 ex mero motu
 
 during the District Attorney's opening statement.
 

 IV. Jury Instruction on Self-Defense
 

 A. Standard of Review
 

 "Whether evidence is sufficient to warrant an instruction on self-defense is a question of law; therefore, the applicable standard of review is
 
 de novo.
 
 "
 
 State v. Cruz,
 

 203 N.C.App. 230
 
 , 242,
 
 691 S.E.2d 47
 
 , 54 (citing
 
 State v. Lyons,
 

 340 N.C. 646
 
 , 662-63,
 
 459 S.E.2d 770
 
 , 778-79 (1995),
 
 aff'd,
 

 364 N.C. 417
 
 ,
 
 700 S.E.2d 222
 
 (2010) ). The trial court's choice of jury instructions rests within its discretion and will not be overturned absent a showing of abuse of discretion.
 
 State v. Nicholson,
 

 355 N.C. 1
 
 , 66,
 
 558 S.E.2d 109
 
 , 152,
 
 cert. denied,
 

 537 U.S. 845
 
 ,
 
 123 S.Ct. 178
 
 ,
 
 154 L.Ed.2d 71
 
 (2002).
 

 "However, an error in jury instructions is prejudicial and requires a new trial only if there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises."
 
 State v. Castaneda,
 

 196 N.C.App. 109
 
 , 116,
 
 674 S.E.2d 707
 
 , 712 (2009) (citations and internal quotation marks omitted).
 

 B. Analysis
 

 To determine whether an instruction on self-defense must be given, "the evidence is to be viewed in the light most favorable to
 
 *643
 
 the defendant."
 
 State v. Moore,
 

 363 N.C. 793
 
 , 796,
 
 688 S.E.2d 447
 
 , 449 (2010). When the defendant's evidence, taken as true, is sufficient to show that he acted in self-defense, the instruction "must be given even though the State's evidence is contradictory."
 

 Id.
 

 Where a defendant is charged with assault with a deadly weapon, a jury instruction on self-defense should be given "only if the circumstances at the time the defendant acted were such as would create in the mind of a person of ordinary firmness a reasonable belief that such action was necessary to protect himself from death or great bodily harm."
 
 State v. Whetstone,
 

 212 N.C.App. 551
 
 , 558,
 
 711 S.E.2d 778
 
 , 784 (2011) (citation omitted);
 
 State v. Spaulding,
 

 298 N.C. 149
 
 , 154,
 
 257 S.E.2d 391
 
 , 394-95 (1979) (holding there must be a real or apparent necessity for the defendant to kill in order to protect himself).
 

 In 2011, the General Assembly enacted several statutes related to self-defense and individual rights related to firearms.
 
 2011 N.C. Sess. Laws 1002
 
 . N.C. Gen.Stat. § 14-51.3 describes the circumstances under which deadly force may be used in self-defense.
 
 N.C. Gen. Stat. § 14-51.4
 
 clarifies when the justification for defensive force is available. Neither statute has been amended since it was enacted.
 

 N.C. Gen.Stat. 14-51.3 provides in pertinent part:
 

 (a) ... [A] person is justified in the use of deadly force and does not have a duty to retreat in any place he or she has the lawful right to be if ...
 

 (1) He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another.
 

 N.C. Gen.Stat. 14-51.3 (2015).
 

 N.C. Gen.Stat. § 14-51.4 provides in pertinent part:
 

 [J]ustification [for defensive force] is not available to a person ... who:
 

 (2) Initially provokes the use of force against himself or herself. However, the person who initially provokes the use of force against himself or herself will be justified in using defensive force if either of the following occur:
 

 a. The force used by the person who was provoked is so serious that the person using defensive force reasonably believes that he or she was in imminent danger of death or serious bodily harm, the person using defensive force had no reasonable means to retreat, and the use of force which is likely to cause death or serious bodily harm to the person who was provoked was the only way to escape the danger.
 

 b. The person who used defensive force withdraws, in good faith, from physical contact with the person who was provoked, and indicates clearly that he or she desires to withdraw and terminate the use of force, but the person who was provoked continues or resumes the use of force.
 

 N.C. Gen. § 14-51.4 (2015).
 

 Defendant argues the evidence he presented at trial required the trial court to provide a self-defense instruction to the jury. Specifically, Defendant asserts Mr. LeClair had an aggressive nature and provoked the confrontation with Defendant. Ms. Davis testified Mr. LeClair had attacked Defendant about a year prior to the shooting. Ms. Davis stated Mr. LeClair had entered Defendant's property and grabbed Defendant "by the neck with one hand." Ms. Davis also testified, on the night of the shooting, Mr. LeClair yelled to Defendant: "Get over here, you pu-y," and threatened, "I will slit your f-king throat right in front of your kid."
 

 However, the evidence tends to show Defendant provoked the confrontation at issue here. Defendant willingly and voluntarily left his property and entered onto Mr. LeClair's property with a loaded rifle. Defendant was not forced into the confrontation. Defendant escalated the confrontation by affirmatively opting to retrieve his rifle, load it, and carry it with him onto Mr. LeClair's property. There is no evidence, tending to show either Mr. LeClair possessed a weapon on his person during the altercation or Defendant had a good faith belief Mr. LeClair was armed with a weapon. Defendant fired
 
 *644
 
 the first shot before Mr. LeClair made any threatening movement.
 

 The evidence, viewed in the light most favorable to Defendant, does not show Defendant was "in imminent danger of death or serious bodily harm [.]" N.C. Gen.Stat. § 14-51.3 ; N.C. Gen.Stat. 14-51.4. Defendant did not communicate an intent to "withdraw[ ], in good faith, from physical contact with" Mr. LeClair or a "desire to withdraw and terminate the use of force" at any time. N.C. Gen.Stat. § 14-51.4(2)(b).
 

 In this case, Defendant was not justified under N.C. Gen.Stat. § 14-51.3 or N.C. Gen.Stat. § 14-51.4 to use deadly force against Mr. LeClair and claim self-defense as an affirmative defense. A person of ordinary firmness, in the Defendant's position, could not have reasonably believed that shooting Mr. LeClair in the groin was necessary in order to escape "imminent danger of death or serious bodily harm." N.C. Gen.Stat. § 14-51.4 ;
 
 see also
 

 Whetstone,
 

 212 N.C.App. at 558
 
 ,
 
 711 S.E.2d at 784
 
 .
 

 In
 
 State v. Plemmons,
 

 29 N.C.App. 159
 
 ,
 
 223 S.E.2d 549
 
 (1976), the victim fired a gun into the air while in front of his mobile home, after the defendant had fired a shotgun near the victim. The defendant had already driven a short distance away from the victim's property when the victim fired his gun.
 

 Id.
 

 After the victim fired his gun, the defendant exited his vehicle and fired another shot at the victim. This shot struck the victim in the face.
 
 Id.
 
 at 160,
 
 223 S.E.2d at 550
 
 .
 

 This Court held, although the evidence showed the victim had fired a shot in the direction of the defendant, the defendant had fired the first shot, and had not abandoned or withdrawn from the altercation. Therefore, "[a]n instruction on self-defense was not warranted by the evidence and the court properly omitted it from his charge."
 
 Id.
 
 at 162-63,
 
 223 S.E.2d at 551
 
 .
 

 Here, as in
 
 Plemmons,
 
 Defendant never abandoned or withdrew from the altercation.
 
 See also
 
 N.C. Gen.Stat. § 14-51.4(b) (requiring a clear indication to withdraw and terminate the use of force in order to justify use of deadly force against the person who was provoked). Mr. LeClair was unarmed and had not physically engaged with Defendant before or at the time Defendant shot him. Viewing the evidence in the light most favorable to Defendant, the trial court properly refused to instruct the jury on self-defense.
 
 Moore,
 
 at 796,
 
 688 S.E.2d at 449
 
 . We find no error in the trial court's ruling.
 

 V. Ex Mero Motu
 

 Defendant argues the prosecutor expressed his personal belief about the weakness of Defendant's case during his opening remarks. Defendant failed to object to this statement at trial, but asserts the trial court should have intervened
 
 ex mero motu.
 
 Defendant contends this statement deprived him of a fair trial before a partial, unbiased jury. Defendant also argues the prosecutor's remarks improperly shifted the State's burden of proof onto Defendant.
 

 A. Standard of Review
 

 "The standard of review when a defendant fails to object at trial is whether the closing argument complained of was so grossly improper that the trial court erred in failing to intervene
 
 ex mero motu.
 
 "
 
 State v. McCollum,
 

 177 N.C.App. 681
 
 , 685,
 
 629 S.E.2d 859
 
 , 861-62 (2006) (citation and internal quotation marks omitted). "In determining whether the prosecutor's argument was ... grossly improper, this Court must examine the argument in the context in which it was given and in light of the overall factual circumstances to which it refers."
 
 State v. Hipps,
 

 348 N.C. 377
 
 , 411,
 
 501 S.E.2d 625
 
 , 645 (1998).
 

 In other words, the reviewing court must determine whether the argument in question strayed far enough from the parameters of propriety that the trial court, in order to protect the rights of the parties and the sanctity of the proceedings, should have intervened on its own accord and: (1) precluded other similar remarks from the offending attorney; and/or (2) instructed the jury to disregard the improper comments already made.
 

 State v. Jones,
 

 355 N.C. 117
 
 , 133,
 
 558 S.E.2d 97
 
 , 107 (2002).
 

 *645
 

 B. Analysis
 

 In his opening statement, the prosecutor stated, "[T]he only thing [D]efendant can rely on to escape this is some self-defense claim. And I contend to you that what Judge Parsons tells you what this is in North Carolina, that will be shot down also."
 

 To determine whether a statement was grossly improper, this Court must examine the context in which the remarks were made and the factual circumstances to which they refer.
 
 State v. Trull,
 

 349 N.C. 428
 
 , 451,
 
 509 S.E.2d 178
 
 , 193 (1998). In order to demonstrate prejudicial error, a defendant must show "[t]here is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice ... is upon the defendant." N.C. Gen.Stat. § 15A-1443(a) (2015).
 

 In this case, the prosecutor contended to the jury that a claim of self-defense would be "shot down" and Defendant failed to object. In
 
 State v. Braxton,
 

 352 N.C. 158
 
 , 202,
 
 531 S.E.2d 428
 
 , 454 (2000),
 
 cert. denied,
 

 531 U.S. 1130
 
 ,
 
 121 S.Ct. 890
 
 ,
 
 148 L.Ed.2d 797
 
 (2001), which was decided prior to the enactment of the use of defensive force statutes, the prosecutor argued to the jury as follows:
 

 And then you move to the third element of what this cowardly bully has to have to come in here and hang his hat on a valid principle of law of self-defense, and it besmirches and degrades self-defense. It's spitting in the eye of the law. It's vomit. It's vomit on the law of North Carolina for this man to try to use self-defense because he's got to show, in addition to the other two, that he was not the aggressor.
 

 This Court held the prosecutor's statement "constitutes a permissible expression of the State's position that, in light of the overwhelming evidence of defendant's guilt, the jury's determination that the defendant acted in self-defense would be an injustice."
 
 Id.
 
 at 203,
 
 531 S.E.2d at 454
 
 . Therefore, "the prosecutor's statement was not so grossly improper as to require the trial court to intervene
 
 ex mero motu.
 
 "
 

 Id.
 

 As in Braxton, the prosecutor's statement in the present case was a permissible expression of the State's position.
 

 Id.
 

 Defendant retrieved his rifle and fired the first shot before Mr. LeClair moved toward Defendant in an attempt to disarm him. Mr. LeClair was not armed with a weapon, nor did he provoke Defendant, to justify his use of deadly force. As discussed
 
 supra,
 
 the evidence, viewed in the light favorable to Defendant, did not warrant a jury instruction on self-defense. There is not a "reasonable possibility" the Defendant would have prevailed had the trial court intervened. N.C. Gen.Stat. § 15A-1443(a).
 

 Defendant has failed to establish any gross impropriety in the State's opening statement in order to warrant a new trial. Defendant failed to show the State's comments "so infected the trial with unfairness that they rendered the conviction fundamentally unfair."
 
 State v. Davis,
 

 349 N.C. 1
 
 , 23,
 
 506 S.E.2d 455
 
 , 467 (1998) (citation omitted),
 
 cert. denied,
 

 526 U.S. 1161
 
 ,
 
 119 S.Ct. 2053
 
 ,
 
 144 L.Ed.2d 219
 
 (1999). We find no error.
 

 VI. Conclusion
 

 Viewing the evidence in the light most favorable to Defendant, the trial court properly refused to instruct the jury on self-defense. Defendant has failed to carry his burden of showing any gross impropriety in the State's opening remarks.
 

 Defendant received a fair trial free from prejudicial errors he preserved and argued. We find no error in Defendant's conviction or the judgment entered thereon.
 

 NO ERROR.
 

 Judges BRYANT and INMAN concur.