IN THE COURT OF APPEALS OF NORTH CAROLINA

2023-NCCOA-8

No. COA22-517

Filed 17 January 2023

Rutherford County, Nos. 19 CRS 451, 452

STATE OF NORTH CAROLINA

v.

COREY LEE OWENS

Appeal by defendant from judgment entered 6 October 2021 by Judge Lisa C. Bell in Rutherford County Superior Court. Heard in the Court of Appeals 29 November 2022.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Joseph Finarelli, for the State.*
>
> *William D. Spence for defendant-appellant.*

TYSON, Judge.

¶ 1    Corey Lee Owens ("Defendant") appeals from a jury's verdict finding him guilty of indecent liberties with a child and attaining the status of a habitual felon. Our review shows no error.

## I.    Background

¶ 2    Defendant engaged in a romantic relationship with Tina Williams between 2009 and 2012. Defendant lived in a single-wide mobile home with Patrick Harrison

in 2011. Williams' daughter, "Sue," was between four and seven years old during the period Defendant and Williams dated. *See* N.C. R. App. P. 42(b) (pseudonym used to protect the identity of minor). Defendant would babysit Sue, while Williams was working on the weekends or when Sue was not in school or at home.

¶ 3      In 2011, Williams left Sue with Defendant. Sue fell asleep on Defendant's couch. Defendant woke Sue, brought her into the bedroom of the trailer, and told her to remove her clothes. Defendant removed his clothes. Defendant grabbed a bottle of lubricant and squirted liquid onto Sue's hands. Defendant told Sue to rub his penis. Sue testified Defendant's penis became hard.

¶ 4      Sue testified Defendant told her to lay down, turn on her side, and laid on his side up against her. Defendant placed his penis between the crack of her buttocks and began pumping her. When Defendant had finished, he told Sue to get dressed. He got down on his knees and asked Sue if she wanted to play a game called "Secrets," which Defendant said he had played with Williams, and also told Sue not to tell the "secret" to anybody. Sue testified Defendant did not threaten her nor insert his penis inside of either her vagina or anus.

¶ 5      Sue testified the shaft of Defendant's penis had "two bumps." Sue's Mother, Williams, testified Defendant he had two "ball bearing" implants inserted near the top of the shaft of his penis during the entirety of their relationship.

¶ 6      Sue later became friends with Defendant's biological daughter in the sixth

grade. Sue testified she told Defendant's daughter and another friend the details of this incident, which had occurred five years earlier. Sue did not remember whether she had identified Defendant as the person who committed these acts to his daughter. Defendant's daughter told Sue to tell an adult about the acts.

¶ 7        Sue testified her grandparents had asked her on multiple times in the two preceding years whether Defendant had "done anything" to her, but she always denied it. The summer after completing the sixth grade, Sue told her mother, Williams, about the incident. Williams did not force Sue to report the incident and she left the decision to Sue. While in the seventh grade, Sue asked Williams to report the incident to law enforcement, which she did.

¶ 8        Rutherford County Sheriff's Investigator Julie Greene arranged an interview for Sue at the Children's Advocacy Center in March 2018. Greene viewed Sue's interview through a live video feed in a monitoring room.

¶ 9        Greene spoke with Defendant. Greene asked Defendant how Sue would have been able to describe the appearance of his penis. Defendant told Greene there was no reason for Sue to be able to describe his penis. Greene asked how Sue could have known about the "bumps" on Defendant's penis and whether those "bumps" existed before his relationship began with Williams. Defendant confirmed he had two "bumps" or "ball bearings" implanted in his penis prior to his relationship with Williams. Defendant also told Greene he had given Williams graphic drawings,

letters, and photographs of his body during their relationship. Defendant denied doing anything sexually inappropriate with Sue.

¶ 10        Defendant was indicted for one count of indecent liberties with a child and for attaining habitual felon status on 5 June 2019. While Defendant was awaiting trial, he sent his own daughter a letter. In the letter Defendant sought her assistance in a plan to discredit Sue's credibility. He urged his daughter to report Sue had made up the allegations against him to protect Williams. Defendant specifically asked for his daughter's involvement to "betray" Sue and instructed her to burn the letter after she had read it. A redacted version of the letter was read into evidence during Defendant's trial without objection.

¶ 11        Defendant was convicted of one count of taking indecent liberties with a child, a class F felony, on 6 October 2021. Defendant pleaded guilty to attaining the status of being a habitual felon, which raised his taking indecent liberties with a child conviction from a class F felony offense class level punishment to a class C felony offense class level punishment.

¶ 12        Defendant was sentenced as a prior record level IV offender to an active term of 96 to 125 months. The trial court also entered a permanent no contact order and ordered Defendant to register as a sex offender for life, upon his release from prison. Defendant appeals.

## II.    Jurisdiction

This Court possesses jurisdiction pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444(a) (2021).

### III. Issues

Defendant argues the trial court erred by failing to intervene *ex mero motu* during the State's opening statement and argues the trial court plainly erred by allowing a witness to vouch and bolster the victim's testimony.

### IV. State's Opening Statement

Defendant argues the trial court erred by failing to declare a mistrial *ex mero motu*, or it alternatively erred by not instructing the jury to disregard the State's opening statement. Defendant failed to object to the challenged statement at trial.

### A. Standard of Review

When a defendant fails to object to portions of an opening statement, our review is limited to an examination of whether the trial court was required to intervene *ex mero motu*. *State v. Gladden*, 315 N.C. 398, 417, 340 S.E.2d 673, 685 (1986). "Under this standard, [o]nly an extreme impropriety on the part of the prosecutor will compel this Court to hold that the trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument that defense counsel apparently did not believe was prejudicial when originally spoken." *State v. Waring*, 364 N.C. 443, 499, 701 S.E.2d 615, 650 (2010) (citation and quotation marks omitted).

### B. Analysis

In her opening statement, the prosecutor stated:

> You are going to hear from Patrick Harrison. He was the defendant's roommate in 2011 at their trailer in Ellenboro when this happened. You are going to hear from Patrick some details. Now, he wasn't around a lot. He wasn't there when this happened to [Sue], but you're going to hear details from him about their trailer and the set up in the room that this happened to show that it is consistent with [Sue's] testimony, specifically that this happened on a mattress on the floor in the back room. And he will corroborate that and say that there was a room like that back in 2011.

Harrison never testified at trial. Defendant contends and argues these statements were facts and matters outside of the record.

To determine whether a prosecutor's statement was grossly improper, this Court must examine the context in which the remarks were made and the factual circumstances to which they refer. *See State v. Trull*, 349 N.C. 428, 451, 509 S.E.2d 178, 193 (1998); *State v. Mills*, 248 N.C. App. 285, 291, 788 S.E.2d 640, 645 (2016).

Our Supreme Court has applied a two-step analysis on prosecutor's statements: "(1) whether the argument was improper; and, if so, (2) whether the argument was so grossly improper as to impede the defendant's right to a fair trial. *State v. Huey*, 370 N.C. 174, 179, 804 S.E.2d 464, 469 (2017) (citation omitted). In order to demonstrate prejudicial error, a defendant must show: "There is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of

showing such prejudice . . . is upon the defendant." N.C. Gen. Stat. § 15A-1443(a) (2021).

¶ 20    The purpose of the opening statement is to forecast the evidence likely to be admitted in the case. *Gadden*, 315 N.C. at 417, 340 S.E.2d at 685. "[T]rial counsel [is] granted wide latitude in the scope of jury argument[.]" *State v. Thomas*, 350 N.C. 315, 360, 514 S.E.2d 486, 513 (1999) (citation omitted).

¶ 21    Here, the trial court properly instructed the jury that the party's opening statements are not evidence. While opening statements are merely a "forecast [of] the evidence", failure to deliver evidence as promised in the opening is fair game for the opposing party to argue in the closing. *See Gadden*, 315 N.C. at 417, 340 S.E.2d at 685.

¶ 22    Defendant further asserts the trial court erred by allowing the corroboration Harrison might have offered. However, the State did not assert Harrison would corroborate the alleged abuse had occurred, only to potentially state Defendant's room in the mobile home contained a mattress on the floor in the back room in 2011 as Sue had described.

¶ 23    Defendant failed to object and did not move to strike. The State did not make improper statements to the jury in its opening argument. Defendant has failed establish the State's opening statement was "grossly improper" and prejudicial to warrant a new trial. *Huey*, 370 N.C. at 179, 804 S.E.2d at 468. Defendant failed to

show the State's comments "so infected the trial with unfairness that they rendered the conviction fundamentally unfair." *State v. Davis*, 349 N.C. 1, 23, 506 S.E.2d 455, 467 (1998) (citation omitted). Presuming, without deciding, improper statements were made by the State, the trial court did not commit reversible error by failing to intervene *ex mero motu*. The statements were not so "grossly improper" and prejudicial to Defendant as to require the trial court's intervention on its own motion. *Huey*, 370 N.C. at 179, 804 S.E.2d at 468. *Waring*, 364 N.C. at 499, 701 S.E.2d at 650.

## V.    Alleged Bolstering

Defendant argues the trial court committed plain error by allowing Greene to improperly vouch for or bolster Sue's credibility. Defendant concedes his trial counsel also failed to object to the testimony he now challenges and the issue is not preserved at trial and on appeal. Unpreserved evidentiary issues are reviewed for plain error. *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983).

## A. Standard of Review

"In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C. R. App. P. 10(a)(4).

This Court's review under plain error is to be "applied cautiously and only in the exceptional case" where the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings" to overcome dismissal for a defendant's failure to preserve. *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citation and quotation marks omitted). To constitute plain error, Defendant carries and maintains the burden to show "not only that there was error, but that absent the error, the jury probably would have reached a different result to demonstrate prejudice" and for this Court to reverse the judgment. *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993) (citation omitted).

## B. Analysis

Defendant argues the following two lines of questioning during the State's direct examination of Greene constitutes impermissible bolstering:

> [The State]: Was her disclosure on that day consistent with what you heard her testify to today?
>
> [Greene]: It was.
>
> . . .
>
> [The State]: Each time that you have heard [Sue] disclose what happened, has she been consistent in her disclosure?
>
> [Greene]: Yes, ma'am.

The Supreme Court of North Carolina has held "[t]he jury is the lie detector in the courtroom and is the only proper entity to perform the ultimate function of every

trial–determination of the truth." *State v. Kim*, 318 N.C. 614, 621, 350 S.E.2d 347, 351 (1986) (citation omitted). "It is fundamental to a fair trial that the credibility of the witnesses be determined by the jury." *State v. Hannon*, 118 N.C. App. 448, 451, 455 S.E.2d 494, 496 (1995) (citation omitted).

¶ 29 This Court and our Supreme Court have repeatedly admonished: "a witness may not vouch for the credibility of a victim." *State v. Giddens*, 199 N.C. App. 115, 121, 681 S.E.2d 504, 508 (2009), *aff'd per curiam*, 363 N.C. 826, 689 S.E.2d 858 (2010). In *Giddens*, this Court has held reversible error occurs when a DSS child protective services investigator testified the defendant "was substantiated as the perpetrator." *Id.* at 118, 681 S.E.2d at 506.

¶ 30 "In a sexual offense prosecution involving a child victim, the trial court should not admit expert opinion that sexual abuse has *in fact* occurred because, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility. *State v. Chandler*, 364 N.C. 313, 318, 697 S.E.2d 327, 331 (2010) (citations omitted).

¶ 31 Unlike in *Giddens*, the testimony of Greene did not substantiate or corroborate Defendant as the perpetrator. The State asked if Sue's "disclosure" was consistent. Our Supreme Court has expressed concern and has warned the State of its gross use of "disclosure" in a context to vouch or bolster a prosecuting witness upon proper objection. *See State v. Betts*, 377 N.C. 519, 524, 2021-NCSC-68, ¶19, 858 S.E.2d 604-

05 (2021) ("Even if it were error for the trial court to admit testimony of the State's witness who used the term 'disclose,' defendant has not shown plain error . . . . Defendant has not shown that the use of the word 'disclose' had a probable impact on the jury's finding that he was guilty." (citation omitted)). Given the context of the testimony and the limited questions asked by the State, Greene's testimony did not vouch for Sue's credibility to demonstrate error and prejudice under plain error review. *Id.* at 525, 2021-NCSC-68, ¶21, 858 S.E.2d at 605.

¶ 32 Greene did not testify that Sue "was believable, had no record of lying, and had never been untruthful." *State v. Aguallo*, 322 N.C. 818, 822, 370 S.E.2d 676, 678 (1988). Greene testified Sue's statements and accusations remained consistent. Defendant's argument under plain error review is overruled. *Betts*, 377 N.C. at 523, 858 S.E.2d at 605.

## VI. Conclusion

¶ 33 The trial court did not err when it failed to intervene *ex mero motu* in the State's opening argument or by failing to instruct the jury to disregard the State's opening statement in the absence of an objection and motion to strike.

¶ 34 The trial court did not err in admitting Greene's testimony about consistency in Sue's accusations without objection. Under plain error review, this testimony did not improperly bolster or vouch for the victim's credibility.

¶ 35 Defendant received a fair trial, free of plain or prejudicial error he preserved

and argued. We find no error in the jury's verdict, Defendant's plea, or in the judgments entered thereon. *It is so ordered.*

NO ERROR.

Judges CARPENTER and GRIFFIN concur.